PRESIDENT AND DIRECTORS OF GEORGETOWN COLLEGE FOR GEORGETOWN UNIVERSITY, Appellants,

v.

Nicholas D. DIAVATIS, Appellee.

No. 83–220.

District of Columbia Court of Appeals.

Argued Sept. 27, 1983.

Decided Dec. 20, 1983.

* Judge Kelly was an Associate Judge of the court at the time of argument.

Louis P. Robbins, Washington, D.C., with whom David S. Houston and Norman M. Glasgow, Jr., Washington, D.C., were on the brief, for appellants.

Larry C. Williams, Washington, D.C., with whom Andrew J. Kline, Washington, D.C., was on the brief, for appellee.

Inez Smith Reid, Washington, D.C., Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Richard B. Nettler, Washington, D.C., Asst. Corporation Counsel, filed a brief for the District of Columbia as amicus curiae, by invitation of the court.

Before KERN, NEBEKER and TERRY, Associate Judges.

TERRY, Associate Judge:

This is an appeal from an order denying appellants' motion for a preliminary injunction. Appellants contend that since they sought injunctive relief from an alleged zoning violation under D.C.Code § 5–426 (1981), they had to show only that they were "specially damaged" by appellee's conduct, and that the trial court therefore should not have employed the traditional equitable criteria applicable to injunctions[1] in ruling on their motion. We hold that the court committed no error and affirm its order.

I

Appellee is the owner and operator of a restaurant known as The Chancery at 704 New Jersey Avenue N.W., across the street from the Georgetown University Law School. The university owns the entire block where The Chancery is situated except for the building occupied by the restaurant and the lot on which it sits. The area in which both the law school and the restaurant are located is in zoning classification C–3–C, which does not permit the establishment of sexually-oriented businesses unless they are first approved by the Board of Zoning Adjustment.

On February 1, 1983, appellee began to provide live female nude dancing entertainment for his restaurant's patrons. A representative of the law school immediately informed the Office of Building and Zoning Regulation that appellee's restaurant was being used as a sexually-oriented business establishment,[2] and a field representative was sent to conduct an inspection. On February 3 the Zoning Administrator sent a "Violation Notice" to appellee which stated that an inspection of the premises and research of the records disclosed that The Chancery was "being operated as a sexual-

---

1. In deciding whether to grant or deny a motion for a preliminary injunction, a trial court must "consider whether the moving party has clearly demonstrated: (1) that there is a substantial likelihood he will prevail on the merits; (2) that he is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to him from the denial of the injunction than will result to the defendant from its grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order." *Wieck v. Sterenbuch*, 350 A.2d 384, 387 (D.C.1976) (footnote omitted); *accord, e.g., Stamenich v. Markovic*, 462 A.2d 452, 457 (D.C.1983); *Don't Tear It Down, Inc. v. District of Columbia*, 395 A.2d 388, 390 (D.C.1978).

2. The definition of a "sexually-oriented business establishment" in the zoning regulations includes

> an establishment which presents as a substantial or significant portion of its activity, live performances, films, or other material which are distinguished or characterized by their emphasis on matters depicting [*sic*], describing or related to *specified sexually [sic] activities* and *specified anatomical areas.*

11 DCMR § 1201 (1982) (emphasis in original). The italicized terms are defined elsewhere in the same section.

ly-oriented business establishment without a valid certificate of occupancy." The Administrator went on to explain the procedures which appellee must follow to apply for a special exception or a zoning variance, and cautioned that if he continued to use the premises in violation of the zoning regulations, "[his] case [would] be referred for appropriate action without further notice . . . ."

On February 4 the university filed this suit in the Superior Court and moved for a temporary restraining order and a preliminary injunction to call a halt to the nude entertainment. The court entered a ten-day restraining order and later extended it for an additional ten days upon the joint request of the parties. The court then held a hearing on the motion for a preliminary injunction and, finding no irreparable harm, denied the motion. The university appeals.

## II

D.C.Code § 5–426 (1981) prescribes criminal penalties for failure to obtain a building permit or certificate of occupancy when either is required.[3] In addition, the last sentence of section 5–426 provides:

> The Corporation Counsel of the District of Columbia or any neighboring property owner or occupant who would be specially damaged by any such violation [viz., failure to obtain a building permit or certificate of occupancy] may, in addition to all other remedies provided by law, institute injunction, mandamus, or other appropriate action or proceeding to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance, or use, or to correct or abate such violation or to prevent the occupancy of such building, structure, or land.

This part of the statute identifies the parties who may seek relief from, and the remedies which may be sought for, violations of the zoning regulations relating to building permits and certificates of occupancy. Appellants contend, however, that the statute "implicitly divides the universe of those who can seek injunctive relief . . . into three parts: the Corporation Counsel and neighboring property owners (or occupants) and everyone else," and that "[o]nly the last category must meet common law equity criteria in order to prevail" (Appellants' Reply Brief at 5). Thus, in appellants' view, they need to show only that they have been "specially damaged" in order to be entitled to injunctive relief. We cannot accept appellants' interpretation of the statutory language.

A common-sense reading of the statute shows that it sets up only a dual classification of parties who may bring suit to enjoin zoning violations: (1) the Corporation Counsel and (2) any neighboring property owner or occupant who would be specially damaged by a violation.[4] Special damage is normally what a private litigant must show in order to acquire standing to bring an action to abate a public nuisance. *Arizona Copper Co. v. Gillespie,* 230 U.S. 46, 57, 33 S.Ct. 1004, 1006, 57 L.Ed. 1384 (1913); see *B & W Management, Inc. v. Tasea Investment Co.,* 451 A.2d 879, 882 (D.C. 1982). We fail to see how the special damage language of the present statute could relate to anything other than the granting of standing to neighboring property owners or occupants to seek relief from zoning violations. The statute simply describes what neighboring property owners or occupants must demonstrate before they "may . . . institute" suit. It does not require the issuance of an injunction on a showing of special damage, but merely authorizes "any neighboring property owner or occupant" who can make such a showing to sue for an injunction.

---

3. Appellee holds a certificate of occupancy for a restaurant at 704 New Jersey Avenue. A new certificate would be required for a sexually-oriented business establishment. Failure to obtain one, in addition to being a criminal offense under section 5–426, would be a violation of the zoning regulations. 11 DCMR § 8104.1 (1982).

4. Appellants' third category, "everyone else," has no right at all under the statute to seek injunctive relief.

What is now codified as D.C.Code § 5–426 (1981) was enacted as section 10 of the Act of June 20, 1938, ch. 534, 52 Stat. 800. The 1938 Act was in turn an amendment of the Act of March 1, 1920, ch. 92, 41 Stat. 500, which treated zoning violations as a common nuisance. Section 9 of the 1920 Act, which section 10 of the 1938 Act superseded, authorized the Corporation Counsel to "maintain an action . . . in the name of the District of Columbia to abate and perpetually enjoin such nuisance." Although the 1938 Act for the first time permitted specially damaged neighboring property owners to enforce the zoning regulations, the legislative history makes clear that the purpose of the new section 10 (now D.C. Code § 5–426) was "substantially the same as" that of section 9 of the 1920 Act. S. REP. No. 1962, 75th Cong., 3d Sess. 5 (1938). The initial legislative treatment of zoning violations as nuisances and the subsequent statutory change to allow certain private parties to bring suit if they can show special damage provide strong indication that this language was designed to confer standing and nothing else. In other words, the statute enables affected neighboring property owners (unlike other ordinary citizens) to enter the courthouse, but it does not guarantee them victory in the courtroom.

In *Brawner Building, Inc. v. Shehyn*, 143 U.S.App.D.C. 125, 442 F.2d 847 (1971), the United States Court of Appeals reviewed the propriety of the granting of a permanent injunction under D.C.Code § 5–422 (1967), now D.C.Code § 5–426 (1981). It concluded that the trial court had erred in granting a permanent injunction, vacated it, and remanded the case for consideration of a preliminary injunction. The court closely analyzed the statute and discussed the availability of preliminary injunctive relief in terms of the traditional equitable criteria. Although the court did not address the specific question presented here, its holding necessarily implies that these criteria were applicable to suits brought by private parties under what is now section 5–426. Indeed, to the extent that the court recognized the special damages language, it appears to have done so in the context of giving the plaintiffs standing. *Id.* at 132, 442 F.2d at 854. *See also Goto v. District of Columbia Board of Zoning Adjustment*, 423 A.2d 917, 920–923 (D.C.1980) (interpreting the term "person aggrieved" in D.C.Code § 5–420 (1973), now D.C.Code § 5–424 (1981), as conferring standing to an adjoining property owner to appeal from a zoning decision without need to show special damage).

The District of Columbia as *amicus curiae*, citing cases from several state courts, argues rather persuasively that a showing that a zoning ordinance has been violated is sufficient as a matter of law to establish irreparable injury. We need not decide in this case whether it is or not, however, and we decline to do so for two reasons. First, this argument was not made in the trial court, and thus we do not have the benefit of the trial court's views on the matter. Indeed, the trial court never made a finding that a zoning violation had occurred (nor was it asked to do so, as far as we can discern from the record). It is a basic precept of appellate procedure that issues not raised in the trial court will not ordinarily be considered by an appellate court. *E.g., Miller v. Avirom*, 127 U.S.App.D.C. 367, 384 F.2d 319 (1967). We see no need to depart from this sound principle in this case. Second, appellants' suit for a permanent injunction is still pending before the trial court. The parties will therefore have an opportunity to litigate this issue fully,[5] and any appeal thereafter will come before us with a properly developed record, a carefully considered decision by the trial judge, and full briefing by the parties.[6]

 Thus we hold, relying on both the statutory language and the legislative his-

5. The District of Columbia may wish to enter the proceedings on the application for a permanent injunction as an intervenor or an *amicus.*

6. Appellants cite *Atchison, T. & S.F. Ry. v. Lennen,* 640 F.2d 255 (10th Cir.1981), in sup-

port of their argument that they need not demonstrate irreparable injury. In *Lennen* a group of railroads sued for injunctive relief from an alleged violation of the Interstate Commerce Act. After declaring that the trial court's dis-

tory, that the portion of D.C.Code § 5–426 which refers to neighboring property owners or occupants who may be "specially damaged" gives standing to such parties to bring suit, but no right to relief without a showing of irreparable harm. In this case, the trial court entertained appellants' motion for a preliminary injunction, which means it must have found that appellants were specially damaged and could therefore seek injunctive relief under the statute.[7] The court then denied the motion, applying the traditional equitable criteria.[8] We find no error in that decision.

*Affirmed.*

cretion to grant or deny an injunction must be "exercised in light of the objectives of the Act," *id.* at 258, the court went on to say:

> When the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown.

*Id.* at 259. We have difficulty reconciling this statement with the seemingly contrary holding of the Supreme Court in *Rondeau v. Mosinee Paper Co.,* 422 U.S. 49, 64–65, 95 S.Ct. 2069, 2078–2079, 45 L.Ed.2d 12 (1975):

> [T]he fact that [plaintiff] is pursuing a cause of action which has been generally recognized to serve the public interest provides no basis for concluding that it is relieved of showing irreparable harm and other usual prerequisites for injunctive relief.

It may be possible to resolve this apparent conflict by reading *Lennen* as saying that a showing of a statutory violation is the legal equivalent of a showing of irreparable harm, which is in substance the argument that the District of Columbia is making here. For the reasons we have stated, however, we need not enter this particular thicket to decide this case.

7. It appears that the trial court simply assumed, without deciding, that there had in fact been a zoning violation. Appellee has asserted throughout these proceedings that the zoning regulations have not been violated. Since this is an issue of fact, it will be necessary for the trial court, in ruling on the request for a permanent injunction, to make a specific finding on the question of whether a violation has actually occurred or is likely to occur before it can decide whether to grant injunctive relief.

8. See note 1, *supra.*