Wendell LUND, et al., Appellants,

v.

## WATERGATE INVESTORS LIMITED PARTNERSHIP, et al., Appellees.

### No. 96–CV–1187

District of Columbia Court of Appeals.

Argued March 18, 1998.

Decided April 8, 1999.

---

Frederic W. Schwartz, Jr., Washington, DC, for appellants.

Richard W. Luchs, with whom Jeannine Rustad, Washington, DC, was on the brief, for appellees JBG Watergate, Inc. and F.P. Investments Watergate, Inc., general partners of Watergate Investors Limited Partnership; JBG Properties, Inc.; and JBG Real Estate Associates, Inc.

William C. Davis, III, Rockville, MD, for appellee Kinney Systems, Inc.

Before FARRELL, RUIZ and REID, Associate Judges.

REID, Associate Judge:

This case concerns a parking dispute between appellants, eight residents of the Watergate West cooperative apartment building and Watergate West, Inc., the owner of the Watergate West cooperative apartment building; and appellees, the owners of the Watergate complex and the manager of a parking facility in the Watergate complex. The trial court granted summary judgment in behalf of appellees. Appellants filed a timely appeal contending that the motions court erred in ruling that appellants: (1) could not enforce a District of Columbia Zoning Commission order and had not exhausted their administrative remedies; (2) failed to show that appellees had violated the unfair trade practices provision of the District of Columbia Consumer Protection Procedures Act; and (3) failed to demonstrate that the manager of the Watergate complex parking facility was negligent or committed fraud/misrepresentation in collecting a parking sales tax from the residents of the Watergate West apartment cooperative, and in not disclosing that they were entitled to an exemption from the tax. We reverse in part and affirm in part.

## BACKGROUND AND FACTUAL INFORMATION

*Appellants' Lawsuit*

On July 26, 1995, appellants, eight residents who owned proprietary leases at the Watergate West, a cooperative apartment building located at 2700 Virginia Avenue, N.W., and Watergate West, Inc., the owner of Watergate West, filed a supplemental complaint against six partnership or corporate entities, including appellees, Watergate Investors Limited Partnership ("Watergate Investors"), the owner of the Watergate complex;[1] and Kinney Systems, Inc. ("Kinney"), which manages one of the parking facilities

---

1. The Watergate complex consists of several properties located at 2500 Virginia Avenue, N.W., 2600 Virginia Avenue, N.W., 2700 Virginia Avenue, N.W., 600 New Hampshire Avenue, N.W., and 700 New Hampshire Avenue, N.W. These properties include cooperative apartments, offices, hotel, and shopping plaza.

at the Watergate complex.[2] The supplemental complaint sought: (1) injunctive relief for the "fail[ure] to provide the number of parking spaces required by the District of Columbia Zoning Commission and the District of Columbia Board of Zoning Adjustment as a condition of the utilization of the premises"; (2) a declaratory judgment that "[t]he rate charged by defendants for parking spaces utilized by the Watergate West residents [is] unfair, unreasonable, and substantially more than that charged to others in comparable circumstances"; and (3) compensatory and punitive damages for: (a) unconscionable parking fees charged in violation of the District of Columbia Consumer Protection Procedures Act; (b) the negligent collection of a parking sales tax; and (c) misrepresentation and fraudulent "failure to disclose that the individual plaintiffs were not required to pay the District of Columbia parking tax."

### Zoning Commission Decisions Regarding Parking at the Watergate Complex

The District of Columbia Zoning Commission approved the construction of the Watergate complex on July 17, 1962, as a mixed-use Planned Unit Development ("PUD"). In connection with the PUD designation, parking spaces were required to be provided beneath the Watergate complex.[3] Through the years after the PUD designation, the Board of Zoning Adjustment approved various modifications to the plan for the Watergate complex, including the number of required parking spaces.[4] The last modification involving parking apparently occurred on September 11, 1989, when the zoning authorities issued an order concerning the expansion of the health club in the Watergate Hotel. The 1989 zoning order specified that: "There

shall be no less than 1,240 parking spaces located in a three (3) level common garage that serves the entire complex, at all times."

A three level parking facility is located under the Watergate Office Building ("the parking facility"). Watergate West residents have parked in the B–2 and B–3 levels of this parking facility for years.[5] In their supplemental complaint, the parkers assert that only 1,052 total spaces are currently available, leaving a shortage of 188 spaces out of the total 1,240 spaces that currently must be provided at the Watergate complex under the 1989 Zoning Commission order. They also allege in their declaratory judgment count that: "The rate charged by [appellees] for the parking spaces utilized by Watergate West residents [is] unfair, unreasonable, and substantially more than that charged to others in comparable circumstances."

### Parking Rates At The Watergate Complex

Fees for parking in the parking facility have changed through the years. According to evidence presented by Kinney, the parking rates for the B–2 and B–3 levels which were in effect as of May 1, 1994, stood at $170 for unreserved monthly parking and $250 for reserved monthly parking. Kinney also collected a parking sales tax of twelve percent from each parker, unless Kinney was provided with tax exempt information. After the parkers filed their lawsuit against appellees, Watergate Investors informed them that they would not be issued monthly parking cards, but "could continue to park in the parking garage on a daily basis, subject to availability, upon payment of a daily parking fee." The parkers argued that Kinney sought to charge them, at a daily rate, either

2. The other entities sued were the general partners of the Watergate Investors Limited Partnership: JBG Watergate, Inc. and F.P. Investments Watergate, Inc.; JBG Properties, Inc.; and JBG Real Estate Associates, Inc. Appellees maintain that JBG Real Estate Associates, Inc. has no relationship to properties owned by the Watergate Investors Limited Partnership.

3. The Watergate complex has three cooperative apartment buildings: Watergate West, Watergate East and Watergate South. Watergate West is situated next to the Watergate Office Building, located at 2600 Virginia Avenue, N.W.

4. See Board of Zoning Adjustment Orders of October 7, 1964, May 17, 1965, March 22, 1968, and February 3, 1969.

5. According to the parkers' supplemental complaint, Watergate West has 136 units and there are 62 parking spaces for Watergate West residents in the parking facility. Watergate East has 241 units, and 238 parking spaces leased by its residents. Watergate South contains 240 units, and residents lease between 240 and 250 spaces.

$420 or $434 per month, with no guarantee of availability.[6]

Appellees presented the affidavit of Mr. Paul Edenbaum, President of the Diplomat Parking Corporation which has a parking facility at 600 New Hampshire Avenue, N.W. in the Watergate complex. He stated that parkers at the Diplomat parking facility are charged $160 per month for unreserved parking and $320 per month for reserved parking. He also stated that parkers in garages in the District of Columbia generally are charged one and a half to two times the prevailing monthly rate for reserved parking.

### The Summary Judgment Motions and Decision of the Motions Court

All of the parties filed motions for summary judgment. The motions court issued an order, dated July 19, 1996, denying appellants' motion for summary judgment, and granting the motion of appellees for summary judgment. The motions court concluded that: (1) it "is powerless to rule that the residents of Watergate West have been or should be allocated a certain number of parking spaces at the garage operated by ... Kinney" and that appellants failed to exhaust their administrative remedies; (2) under *Urban Invs., Inc. v. Branham*, 464 A.2d 93 (D.C.1983), appellants did not sustain their burden to show unconscionability of the parking rates charged to them; (3) the evidence presented by appellants did not show that Kinney knew or should have known that appellants were entitled to a parking sales tax exemption, or that Kinney owed a duty to them to "interpret or apply the law properly"; and (4) appellants failed to prove fraud or misrepresentation.

6. The record reveals that at least one of the parkers was paying $200 a month for reserved parking in the facility located at 2700 Virginia Avenue, N.W. This parking space was leased from another owner of a cooperative apartment in the Watergate West.

7. 11 DCMR § 3022.1 provides: "The rules of procedure set forth in this section shall apply to applications for a change in the Zoning Map of the District pursuant to § 102 of chapter 1 of this title [pertaining to amendment of zoning regulations and zoning maps], and to applications for

### ANALYSIS

### *Standard of Review*

■ " 'In reviewing a motion for summary judgment, we must assess the record independently ... [and view it] in the light most favorable to the party opposing the motion.' " *Kelley v. Broadmoor Cooperative Apartments,* 676 A.2d 453, 456 (D.C.1996) (quoting *Walton v. District of Columbia,* 670 A.2d 1346, 1353 (D.C.1996) (internal quotation and citation omitted)). *See also Young v. Delaney,* 647 A.2d 784, 788 (D.C.1994). " 'We will affirm the entry of summary judgment if there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " *Kelley, supra,* 676 A.2d at 456 (quoting *Holland v. Hannan,* 456 A.2d 807, 814 (D.C. 1983) (internal quotation and citation omitted)).

### *The Zoning Issue: Standing and Exhaustion of Administrative Remedies*

The motions court concluded that: "Contrary to plaintiffs' argument, the Court is powerless to rule that the residents of Watergate West have been or should be allocated a certain number of parking spaces at the garage operated by defendant Kinney Systems, Inc." In explanation of its conclusion, the motions court stated that: "[The Court] cannot allocate parking spaces to Watergate West residents, nor can it enforce any order or promise regarding availability of parking at the Watergate West cooperative against these defendants." The court concluded that the parkers had not exhausted their administrative remedies. In reaching its conclusions, the motions court relied, in part, on 11 DCMR § 3022.1 and 3105 (1995).[7]

planned unit developments, air space developments, and similar plan review activities of the Commission, except as otherwise provided in § 3012 [concerning Zoning Commission review of applications and petitions]."

11 DCMR § 3105 addresses the jurisdiction of the Board of Zoning Adjustment. Section 3105.1 provides in part: "The Board ... shall hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, decision, determination, or refusal made by any administrative officer or body, including the

On appeal, appellants contend that the motions court had the authority to grant the requested declaratory and injunctive relief, and misconstrued the relief they demanded. They emphasize that they sought (1) to "hold Watergate Investors to their predecessors['] representations before the Zoning Commission" concerning "the total number of parking spaces assigned," and (2) a declaration that "they were allocated the *right* to a parking space in the Watergate complex at a reasonable rate in reasonable proximity to their apartment" (emphasis supplied). Thus, they maintain, the court had the authority to enforce the Zoning Commission order concerning the total number of parking spaces required at the Watergate complex, and there was no violation of the exhaustion of remedies doctrine in this case. In support of their position, they rely on D.C.Code § 5–426 (1994) and implementing regulation 11 DCMR § 3201.2. Section 5–426 provides in relevant part:

> The Corporation Counsel of the District of Columbia or any neighboring property owner or occupant who would be specially damaged by any such violation may, in addition to all other remedies provided by law, institute injunction, mandamus, or other appropriate action or proceeding to ... correct or abate such violation....

Section 3201.2 of 11 DCMR virtually mirrors § 5–426.[8] Under § 5–426 and the implementing regulation, appellants contend the motions court had jurisdiction to consider the merits of the declaratory judgment and injunctive relief counts of their complaint, as evidenced by this court's opinion in *President and Dirs. of Georgetown College For George-*

*town Univ. v. Diavatis,* 470 A.2d 1248, 1250–51 (D.C.1983).

Appellees agree with the *motions court's* jurisdictional conclusion. Except for Kinney, appellees contend that appellants "have no [proprietary] interest in the parking spaces in the facilities at the [Watergate] properties" and thus "have no right to enforce the zoning regulations." They stress the motions court's statement that appellants "are not the owners of parking spaces at the cooperative." Therefore, they argue, appellants must first exhaust their administrative remedies before the zoning authorities, prior to seeking relief from the court. Kinney also maintains that appellants have not exhausted their administrative remedies, and asserts that appellants must first pursue their claims before the Zoning Commission and the Board of Zoning Adjustment. Furthermore, Kinney asserts that because appellants did not appeal from the Zoning Commission's 1989 decision, they are now barred from filing a new claim in the trial court. Kinney points out that each of the parkers has found alternative parking in the Watergate complex. Appellees do not address D.C.Code § 5–426, nor this court's decision in *President and Dirs. of Georgetown College, supra.*

■ We turn now to the question as to whether appellants had standing under § 5–426. "A private plaintiff must assert 'special damage' in order to enjoin a zoning violation" under § 5–426. *B & W Management, Inc. v. Tasea Inv. Co.,* 451 A.2d 879, 883 n. 8 (D.C. 1982) (citations omitted). In *President and Dirs. of Georgetown College,* a case involving a request for a preliminary injunction, Georgetown University asserted its status as a neighboring property owner under § 5–426

Mayor, in the administration or enforcement of this title."

Section 3105.2 provides in part: "The Board shall also have original jurisdiction to grant variances ...; to grant special exceptions ...; and to exercise all other powers authorized by the Zoning Act...."

The motions court also cited the Zoning Regulations §§ 7501.393, 7501.43 (1958). We have been unable to locate a § 7501.393 of the 1958 Zoning Regulations. Section 7501.43 concerned one factor to be considered during the National Capital Planning Commission's review of "an application for a large-scale planned development." The factor was stated as whether: "Any

deviation from the use, height, area, density or bulk provisions of [the zoning] regulations will have any adverse effect on the use of neighboring property in accordance with the zoning plan."

8. 11 DCMR § 3201.2 provides in relevant part:

> The Corporation Counsel of the District, or any neighboring property owner or occupant who would be specially damaged by any violation of this title, may, in addition to all other remedies provided by law, institute injunction or other appropriate action or proceeding to ... correct or abate a violation; or to prevent the occupancy of the buildings, structure, or land.

and sought injunctive relief against a neighborhood restaurant, The Chancery, for an alleged zoning violation. We "h[e]ld, relying on both the statutory language and the legislative history, that the portion of D.C.Code § 5–426 which refers to neighboring property owners or occupants who may be 'specially damaged' gives standing to such parties to bring suit, but no right to relief without a showing of irreparable harm." *President and Dirs. of Georgetown College,* 470 A.2d at 1251–52.

In the case before us, the motions court focused initially on whether the appellants owned the parking spaces at the Watergate West, not whether they were "neighboring property owners or occupants." Similarly, on appeal, the appellees focus on the question whether appellants had a proprietary interest in the parking spaces, while appellants concentrate on whether the Watergate Investors provided the 1,240 parking spaces for the Watergate Complex in accordance with the representations of their predecessors to the Zoning Commission and as required by the zoning authorities, and whether their "right" to a parking space at a reasonable rate in reasonable proximity to their apartment complex has been violated.

Within the structure of the Watergate complex, including the Watergate building which houses the parking facility in which Watergate West residents have parked, Watergate West is a neighboring property owner, and the parkers are at least neighboring property occupants under § 5–426 and 11 DCMR § 3201.2. Thus, if appellants can demonstrate that they would be specially damaged by a violation of a zoning order, they would have standing to seek injunctive relief and a declaratory judgment.

■ We have never held that a showing of a violation of a zoning order *per se* is sufficient as a matter of law to establish special

damage under D.C.Code § 5–426.[9] In this case, we need not determine whether appellants have standing without pleading special damage. Appellants have alleged special damage in the form of (1) an unreasonable or increased parking rate compared with that paid by parkers from other Watergate cooperative apartments, and (2) the alleged denial of a "right to a parking space at a reasonable rate in reasonable proximity to their apartment." [10] These allegations are supported by evidence sufficient to withstand a jurisdictional attack based on the standing doctrine.

■ Our review of the motions court's order indicates that the court did not address the specific claims raised in the first and second (injunctive relief and declaratory judgment) counts of appellants' supplemental complaint: the failure of Watergate Investors to maintain the 1,240 parking spaces as required by the zoning authorities, and the denial to them of parking spaces at the Watergate complex that are fair and reasonable under the circumstances. Under § 5–426, the motions court is empowered to determine in this case whether Watergate Investors now maintain the 1,240 parking spaces at the Watergate complex which are required by the zoning authorities, and if not, whether appellants are entitled to injunctive relief, if they can demonstrate irreparable injury. The court also has the authority to ascertain, in connection with appellants' declaratory judgment claim, whether any zoning orders expressly, or implicitly through incorporation of representations to zoning authorities by the Watergate Investors' predecessors, entitle appellants to parking spaces in reasonable proximity to Watergate West and at a fair and reasonable rate under the circumstances. Therefore, we are constrained to remand this matter to the trial court for resolution of these issues relating to counts one and two of appellants' supplemental complaint.

9. We declined to address this issue in *President and Dirs. of Georgetown College, supra,* for procedural reasons since the District had not presented its argument in the trial court and the question of a permanent injunction was still pending before the trial court. Moreover, since "the statutory injunction action based on ... [the] alleged zoning violation [was] moot, ... we intimate[d] no opinion on the nature and degree of special damage required to sustain a private action for

injunctive relief under ... § 5–422 (recodified as ... § 5–426)." *B & W Management, Inc. v. Tasea Inv. Co., supra,* 451 A.2d at 884 n. 10.

10. The claim of special damage based on an unreasonable or increased parking rate appears to stem from appellants' filing of a lawsuit rather than appellees' alleged zoning violation.

### The District of Columbia Consumer Protection Procedures Act

### Issue

In the third count of their supplemental complaint, appellants alleged that: "The rental charged by [appellees] for the parking space leased by the individual [appellants] was and is unconscionable ... under [D.C.Code] § 28–3904(r)." D.C.Code § 28–3904(r) and (r)(3) (1996), part of the District of Columbia Consumer Protection Procedures Act, provide in relevant part that it is an unlawful trade practice to:

(r) make or enforce unconscionable terms or provisions of sales or leases; in applying this subsection, consideration shall be given to the following, and other factors:

(3) gross disparity between the price of the property or services sold or leased and the value of the property and services measured by the price at which similar property or services are readily obtainable in transactions by like buyers or lessees.

In essence, appellants contend in their supplemental complaint that, before and after they were evicted from their parking spaces because of their lawsuit against appellees, they were charged unconscionable daily parking rates instead of an unreserved monthly rate under their proprietary lease, as evidenced by the alleged gross disparity between the daily rates they were charged and the monthly rates other residents at the Watergate Complex had to pay. They maintain that the daily parking rate they were charged amounted to a monthly rate of $420–$434, with no guarantee of availability, instead of the $170 a month unreserved rate, for a disparity of $250 ($420 minus $170). They claim that the motions court ignored the statutory language set forth in § 28–3904(r)(3), and instead, applied only the unconscionability test set forth in *Urban Invs., Inc., supra.* The appellees support the conclusion of the motions court that, as a matter of law, appellees did not violate the unfair trade practices provision of the District of Columbia Consumer Protection Procedures Act.

The motions court stated:

The uncontroverted evidence before the Court ... demonstrates that the reserved and nonreserved parking rates are comparable to those charged at a nearby parking garage, are even less than the prevailing ratio of unreserved-to-reserved rates charged in the District, and are fair and reasonable.... [And] do not demonstrate "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."

In reaching its conclusion, the trial court relied in part on *Urban Invs., Inc., supra,* and the affidavit of Mr. Paul G. Edenbaum, President of Diplomat Parking Corporation which operated a parking facility at 600 New Hampshire Avenue, N.W. in the Watergate complex.

To demonstrate unconscionability, "usually, the party seeking to avoid the contract must prove ...: 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Id.* at 99 (quoting *Williams v. Walker–Thomas Furniture Co.,* 121 U.S.App.D.C. 315, 319, 350 F.2d 445, 449 (1965)). Based on the evidence before it, the motions court concluded in relevant part that appellants failed to "demonstrate the absence of meaningful choice or contract terms which are unreasonably favorable to one party." The court further stated that: "[Appellants] have not provided, nor can they provide, evidence which would lead this Court to determine that the parking terms afforded by Kinney Systems, Inc. are unconscionable."[11] We see no basis in the record before us on which to disturb these conclusions.

The motions court did not explicitly consider § 28–3904(r)(3) which lists as one factor to be considered in applying subsection (r), the "gross disparity between the price of the property or services sold or leased and the value of the property and services measured by

---

11. By order dated December 15, 1995, the motions court limited appellants' witnesses "to the named plaintiffs, the corporate designee, and witnesses learned through discovery who must be added by motion." Appellants do not contest these restrictions in this appeal.

by the price at which similar property or services are readily obtainable." However, in reaching its conclusions the motions court implicitly addressed § 28–3904(r)(3). The court expressly referenced the affidavit of Mr. Edenbaum. In his affidavit, Mr. Edenbaum set forth the unreserved and reserved monthly rates charged by the Diplomat Parking Corporation which runs a parking facility at the Watergate complex. The unreserved rate charged is $160 and the reserved is $320. In addition, Mr. Edenbaum stated that: "Garage operators in the District of Columbia customarily charge 1 ½ to 2 times the prevailing monthly rate for reserved parking." Thus, Diplomat could charge a monthly rate of $400 for reserved parking. Moreover, because of restrictions placed on appellants by court order, see supra, note 11, there is no credible evidence in the record that reflects any gross disparity within the meaning of § 28–3904(r)(3), that is, "between the price of the property or services sold or leased and the value of the property and services measured by the price at which similar property or services are readily obtainable in transactions by like buyers or lessees." Thus, we affirm the court's judgment as to the consumer protection unlawful trade practices' issue.

### Negligence, Fraud/Misrepresentation, and the Parking Sales Tax Issue

Appellants contend that Kinney negligently collected a parking tax from them which they were not required to pay under

D.C.Code § 47–2001(n)(1)(L)(i), and that Kinney fraudulently failed to inform appellants that they had no obligation to pay the parking sales tax.[12] Appellees argue that Watergate West is ineligible for the statutory exemption because it does not own a cooperative unit. Moreover, they contend that the statute does not impose an affirmative duty on a parking facility to inform its customers of a parking sales tax exemption. Rather, those claiming the exemption have a duty to apply for a card from the Mayor or his designee and present it to the parking facility. In addition, they contend, appellants failed to present evidence showing negligence or fraud or misrepresentation.

The motions court concluded that appellants presented no evidence to show negligence or fraud or misrepresentation on Kinney's part, and that it is not clear that appellants are entitled to the parking sales tax exemption. We conclude that nothing in the record before us compels a different result.

Appellants failed to present any credible evidence as to the standard of care that appellees owed them with respect to the parking sales tax exemption. Since this matter was "beyond the ken of a lay juror," as the motions court indicated, appellants had to prove "the applicable standard of care, [and] a deviation therefrom by expert testimony." Levy v. Schnabel Found. Co., 584 A.2d 1251, 1255 (D.C.1991). However, because they were precluded from presenting expert testi-

12. D.C.Code §§ 47–2001(n)(1)(L)(i), (ii)(I) and (iii) (1997) provide in pertinent part:

(n)(1) ... For the purpose of the tax imposed by this chapter, [the] terms [retail sale and sale at retail] shall include, but not be limited to, the following:

....

(L) The sale of or charge for the service of parking, storing, or keeping motor vehicles or trailers, except that:

(i) Where a sale or charge for the service described in this subparagraph is made to a District resident who is ... the owner of ... a cooperative unit in which he or she resides, and the motor vehicle or trailer of the ... owner is parked, stored or kept on the same premises on which the ... owner has his or her place of residence, except as otherwise provided in this paragraph the sale or charge is exempt from the tax imposed by this subparagraph. The exemption shall not extend to ...

a[n] owner whose motor vehicle or trailer is used for commercial purposes or whose occupancy of the building is for commercial purposes; or

(ii)(I) Where the sale or charge for the service is made to a District resident who possesses and shows to those providing the service a parking sales tax exemption card issued and signed by the Mayor or his or her duly authorized representative pursuant to sub-subparagraph (iii) of this subparagraph, the sale or charge is exempt from the tax imposed by this paragraph [except for a motor vehicle or trailer used for commercial purposes];

....

(iii) Upon application by a District resident, the Mayor shall issue to him or her a parking sales tax exemption card; provided, that the resident: [satisfies certain requirements specified in this sub-subparagraph].

(Emphasis added).

mony by court order, *see supra,* note 11, they could not prove that appellees owed them the duty to disclose and honor the District's parking sales tax statutory exemption. Nor did they present any evidence which could satisfy the elements of fraud or misrepresentation. *See Pyne v. Jamaica Nutrition Holdings Ltd.,* 497 A.2d 118, 131 (D.C.1985) ("To prove fraud, a plaintiff must show by clear and convincing evidence that there is a false representation of material fact which is knowingly made with the intent to deceive and action is taken in reliance upon the misrepresentation." (citations omitted)); *Howard v. Riggs Nat'l Bank,* 432 A.2d 701, 706–07 (D.C.1981) (false representation must be material).

In addition, we agree with the motions court that it is not clear from the face of the statute that appellants are exempt from the parking sales tax. The statute specifies that the person claiming the exemption must keep his or her "motor vehicle ... *on the same premises on which the ... owner has his or her place of residence*" (emphasis added). D.C.Code § 47–2001(n)(1)(L)(i). The meaning of the italicized language is not obvious. In the context of this case, the italicized words could mean only on the actual property of Watergate West, or they could refer to the entire property of the Watergate complex. We see no evidence in the record, presented by appellants to the motions court, which addresses this issue.

For the reasons set forth above, we reverse the motions court's summary judgment on the issue of standing and exhaustion of administrative remedies and remand this matter to the trial court for further proceedings on the injunctive and declaratory judgment counts of appellants' supplemental complaint. However, we affirm the motions court's judgment with respect to appellants' claims under the District of Columbia Consumer Protection Procedures Act and those asserting negligence, fraud and misrepresentation with respect to the collection of a parking sales tax.

*So ordered.*