**Rouzbeh E. MAZANDERAN, Plaintiff,**

v.

**INDEPENDENT TAXI OWNERS'
ASSOCIATION, INC.,
Defendants.**

**Civ. A. No. 86–2430–SSH.**

United States District Court,
District of Columbia,
Civil Division.

Nov. 17, 1988.

Edward J. Kiley, Washington, D.C., for plaintiff.

Pierre J. LaForce, Michael A. Forscey, Christine V. Simpson, Washington, D.C., for defendants.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendants' motions for summary judgment,

or in the alternative, to dismiss.[1] For the reasons set forth below, defendants' motions are granted in part and denied in part.

### Background

Plaintiff, at the time he brought this complaint, was a member of defendant Independent Taxi Owners' Association, Inc. (hereinafter "ITOA").[2] Plaintiff alleges that ITOA is a nonprofit cooperative association existing under the laws of the District of Columbia, although ITOA itself counters that it is a nonprofit Delaware corporation conducting business in the District. The parties agree that ITOA is a voluntary membership organization of independent taxicab owners and operators.

ITOA membership is divided into three categories of active members: full, limited, or associate.[3] Only full members are entitled to vote; they are also entitled to own and operate up to sixty cabs. Limited members may own and operate up to twenty cabs. Associate members are permitted only one cab, which they must personally drive.

ITOA membership has two principal benefits. First, it allows members to use the ITOA insignia on their cabs. ITOA is generally known to the public as "Diamond Cab," and the "Diamond Cab" logo is a fairly recognizable one. Second, ITOA members share a radio dispatch service. This service, which communicates requests for cabs to drivers, is necessary in order to compete effectively.

ITOA members must contribute to an insurance sinking fund.[4] ITOA by-laws further require members to purchase gasoline and certain other supplies through ITOA:

> ... every member ... shall, during the lifetime of his membership, purchase all gasoline, oil, greases and supplies used in the operation of his taxicab business through the Independent Taxi Owners Association, Incorporated, or such agencies as it may by order direct, for not more than legitimate market prices which prevail at competitive stations....

By–Laws of Independent Taxi Owners' Association, Incorporated, Article XIX, Section 1. Membership dues to ITOA cover administrative expenses, life insurance, and a claims department.

Plaintiff alleges that defendants have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by restraining competition among members, by requiring members to purchase liability insurance and supplies through ITOA, by restricting the use of radio dispatch facilities for the benefit of full members, and by only permitting full members to vote. Plaintiff further alleges that defendants have restrained trade in violation of D.C.Code § 28–4502 (1981). Plaintiff also asserts a claim that defendants have engaged in unlawful trade practices, a violation of D.C.Code § 28–3904 (1981). Finally, in his supplemental complaint, plaintiff contends that procedures used in his expulsion from ITOA in May 1987 violated D.C.Code § 29–1130 (1981). He also contends that ITOA's board of directors, as well as other full members, instructed limited members to boycott any attempts by plaintiff to rent a cab as an individual driver in violation of Section 1 of the Sherman Act. Plaintiff seeks injunctive relief, an order directing ITOA to surrender its certificate of authority to do business in the District of Columbia, and treble damages and attorneys' fees pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.

### Discussion

*Antitrust Claims*

Section 4 of the Clayton Act confers the right to bring a private antitrust action to

---

**1.** Defendants have filed two motions to dismiss. The second motion was filed in response to plaintiff's supplemental complaint. Those motions are not discussed separately in this Memorandum Opinion.

**2.** The remaining defendants are officers and board members of ITOA. Plaintiff was expelled from ITOA in May 1987.

**3.** ITOA also has three classes of inactive members.

**4.** This fund is used to pay judgments recovered against members for death or bodily injury arising from the use of "Diamond" cabs.

"any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws...." 15 U.S.C. § 15. Although couched in broad language, this section sets forth crucial standing requirements. Of especial importance is the two-fold requirement of individual economic injury to plaintiff that is grounded in the antitrust laws. *See Brunswick Corp. v. Pueblo Bowl–O–Mat,* 429 U.S. 477, 490, 97 S.Ct. 690, 698, 50 L.Ed.2d 701 (1977) ("Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."); *Hecht v. Pro–Football, Inc.,* 570 F.2d 982, 987 (D.C.Cir.1977) ("[P]laintiff must show both an *injury-in-fact* to his 'business or property' and a *causal connection* between that injury and the defendant's allegedly illegal acts."), *cert. denied,* 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978).

In his original complaint, plaintiff alleges that defendants' violations of the antitrust laws "have resulted in a direct and substantial restraint upon the trade and commerce in which Plaintiff is involved." Complaint at 10. He further alleges that he "has suffered and continues to suffer substantial monetary loss," although these losses have not been pleaded with real particularity. It appears, however, that plaintiff believes that defendants have reduced his income by manipulating the radio dispatch system and by charging him fees for association membership and its concomitant benefits. In his supplement to the original complaint, plaintiff asserts additional injury stemming from defendants'

expulsion of plaintiff from ITOA and their alleged conspiracy to prevent him from renting a cab as an individual driver.

Plaintiff's allegations of individual economic injury related to ITOA's tiered system of membership are less direct. He contends that the membership structure permits full members (who are the only voting members of ITOA) to manipulate the radio dispatch system; to approve, or disapprove, of new members without regard to the criteria set forth in the ITOA by-laws; and to expel non-voting members in a punitive manner.[5] The heart of plaintiff's cause of action is his contention that official ITOA policy, as reflected in the by-laws, differs markedly from actual practice. Although plaintiff purports to challenge certain official practices, his primary concern is with "hidden" policies that benefit full members to the detriment of others.[6]

■ The Court finds that summary judgment is appropriate insofar as plaintiff seeks to raise a claim against ITOA's official policies and practices as set forth in the organization's by-laws. Plaintiff simply has not met his burden of claiming any individual economic injury arising from those practices.[7]

■ The Court concludes that summary judgment is inappropriate at this stage of litigation with respect to plaintiff's claims regarding actual practices. The parties dispute the essential facts. For example, plaintiff contends that defendants, along with various other full members of ITOA, have conspired to manipulate the benefits

---

**5.** Plaintiff's individual injury would stem from the manipulation of the radio dispatch system and the power to expel. In his complaint, plaintiff also alleges injury to persons using his cab service due to "Defendants' ability to prevent effective competition from plaintiff." The Court does not understand how plaintiff purports to indicate any economic harm to his customers, given that rates charged for cab service in the District are highly regulated. Even if a customer is inconvenienced by a possible delay in obtaining a cab due to manipulation of the dispatch service, this would not affect the fare, which would be based on the number of passengers and the number of zones crossed after the passengers are picked up.

**6.** For example, plaintiff strongly disagrees with defendants' assertions that the gasoline purchasing requirements in the by-laws are not enforced; he also appears to claim that the gasoline is sold at above-market prices.

**7.** Because plaintiff has not alleged specific individual injury, the Court does not need to reach the question of whether ITOA's official practices violate the antitrust laws. It appears, however, that they would not. The neutral operation of a radio dispatch system, for example, would promote efficiency and thereby improve competition.

of the radio dispatch system.[8] Plaintiff's theory is that defendants have arranged for radio dispatch calls for cab service to be offered first to full members. If full members decline to take a particular call, or calls outnumber the full members available, then requests for service are offered to other ITOA members. Plaintiff argues that defendants' handling of the radio dispatch service amounts to a group boycott and is thus a *per se* violation of the antitrust laws. Defendants flatly deny that any such manipulation occurs and argue that the existence of a neutrally operated radio dispatch system furthers efficient competition.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). On the record before it, the Court cannot conclude, with respect to plaintiff's antitrust claims, that there is no genuine issue as to any material fact so that defendants are entitled to judgment as a matter of law. *See id.*

### Plaintiff's State Law Claims

█ Plaintiff's original complaint raises a state law claim under the District's prohibitions against unfair trade practices, D.C. Code §§ 28–3901(a)(2), 28–3904 (1981).[9] Plaintiff's supplemental complaint adds a cause of action under D.C.Code § 29–1130 (1981), which governs proper procedures for expulsion of members from cooperative associations.

Plaintiff's unfair trade practice claim rests on plaintiff's purported status as a consumer within the meaning of the statute. *See* Complaint at 15 ("Plaintiff is a 'consumer' as that term is defined" by the D.C.Code). "Consumer" is defined as:

... a person who does or would purchase, lease (from), or receive consumer goods and services, including a co-obligor

or surety, or a person who does or would provide the economic demand for a trade practice; as an adjective, "consumer" describes anything, without exception, which is primarily for personal, household, or family use.

D.C.Code § 28–3901(a)(2) (1981). It is difficult to understand how plaintiff, as a taxicab operator, fits under this conventional definition of consumer. First, the contested purchases of gasoline and supplies are made in connection with his role as an independent businessman. Such purchases cannot be categorized as being for "personal, household, or family use." Nor can one extend this definition to plaintiff through the clause "a person who does or would provide the economic demand for a trade practice." A trade practice is defined as:

... any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services.

*Id.* at § 3901(a)(6). Plaintiff is not providing the economic demand for a trade practice, that is, the offering of consumer services—he is providing the service itself. Nor is he on the "demand" side of the ledger with respect to ITOA, despite his purchase of gasoline and his contributions to the organization for group services. There is simply no basis for treating plaintiff as a consumer under the District's unfair trade practices statute. *See Independent Communications v. MCI Telecommunications*, 657 F.Supp. 785, 787–88 (D.D.C.1987) (the Act is intended to apply to the "consumer-merchant relationship," not to "a relationship between two entities which are both on the supply side of a consumer-merchant interaction").

█ Plaintiff's other state law claim is also without merit. Plaintiff contends that his expulsion from ITOA violated procedures for such expulsion set forth in the

---

**8.** That system is supported by monthly fees paid by all members of ITOA.

**9.** Plaintiff also brings suit under the District of Columbia's antitrust provisions, D.C.Code Ann.

§ 28–4502. Analysis of plaintiff's state antitrust claim necessarily follows that of the federal claim and the Court finds summary judgment inappropriate at this time.

District's statutory regulation of cooperative associations. That may be true. ITOA is not, however, a cooperative association. D.C.Code § 29-1101 defines "association" as "a group enterprise legally incorporated under this chapter." A group that is previously incorporated under another law of the District may elect to be bound by this chapter, *see* D.C.Code § 29-1140 (1981), but nothing requires it to do so. Similarly, foreign corporations or associations are entitled to do business in the District as either a foreign corporation or association but continue to be governed by the laws of their state of incorporation or organization. *See* D.C.Code § 29-1141 (1988 Supp.).

ITOA is organized under the laws of Delaware as a non-profit corporation and is registered to conduct business in the District under the Business Corporation Act, D.C.Code §§ 29-301 *et seq.* (1981). Plaintiff has provided the Court with no facts contravening defendant ITOA's affidavits and other submissions relating to its organization. The statute plaintiff relies upon simply does not apply to defendants and plaintiff's cause of action must fail.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it hereby is

ORDERED, that defendants' motion for summary judgment is denied with respect to plaintiff's state and federal antitrust claims because there are genuine issues of material fact in dispute. It hereby further is

ORDERED, that defendants' motion for summary judgment is granted with respect to plaintiff's state law claims of unfair trade practices and improper expulsion from a cooperative association.

SO ORDERED.