*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-618

DONALD ROTUNDA, APPELLANT,

v.

MARRIOTT INTERNATIONAL, INC., APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CAB-6829-11)

(Hon. Frederick H. Weisberg, Trial Judge)

(Argued June 24, 2015                    Decided September 3, 2015)

*Paul D. Cullen*, *Sr.*, and *Joyce E. Mayers*, with whom *Toni J. Ellington* was on the supplemental brief, for appellant.

*Holly Drumheller Butler* and *Bruce V. Spiva*, with whom *Rhett P. Martin* and *Charles P. Scheeler* were on the brief, for appellee.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, *Bennett Rushkoff*, Chief, Public Advocacy Section, and *Nicholas Bush*, Assistant Attorney General, filed a brief *amicus curiae* on behalf of the District of Columbia.

Before THOMPSON and BECKWITH, *Associates Judges*, and FARRELL, *Senior Judge*.

FARRELL, *Senior Judge*:   Appellant Donald Rotunda brought this suit for

damages under D.C. Code § 28-3905 (k)(1) (2012 Repl.) part of the District of

Columbia Consumer Protection Procedures Act (CPPA), on behalf of himself and the "general public." In the complaint Rotunda expressly disclaimed any intention to seek class certification under Superior Court Rule of Civil Procedure 23. The trial court dismissed the representative portion of the suit for that reason.[1] We affirm, because we find no explicit statement of an intention by the Council of the District of Columbia to supplant with *ad hoc* procedures the framework long established by Rule 23 to govern representative suits in the Superior Court.

## I.    Background

Rotunda sued appellee Marriott International, Inc. under the CPPA for alleged deception in quoting prices for rooms at its Russian hotels in U.S. dollars, when payment at checkout was required to be in Russian rubles at an internal exchange rate invariably more favorable to the hotel than that day's Central Bank exchange rate. The suit was brought on behalf of Rotunda personally and all those members of "the general public," D.C. Code § 28-3905 (k)(1), who had allegedly been victimized by this practice. It sought statutory or actual damages.

---

[1] As will be apparent, final judgment was then entered after Rotunda and appellee reached a settlement on Rotunda's individual claim for damages.

The case came before Judge Weisberg on Marriott's motion to dismiss the representative action because Rotunda had expressly declined to seek class certification and compliance with the procedures of Rules 23 and 23-I. The judge recognized that the same issue had been decided by Judge Bartnoff in an earlier unrelated case, *Margolis v. U-Haul Int'l, Inc.*, 2007 CA 5245, 2009 D.C. Super. LEXIS 8 (D.C. Super. Ct. Dec. 17, 2009), and he dismissed largely on the strength of Judge Bartnoff's reasoning and dismissal there. Specifically, he agreed with her "that a CPPA claim for money damages brought by an individual on behalf of himself *and* other similarly situated members of the general public is in essence a class action, whether pled as such or not, and must satisfy the requirements of Rule 23" (emphasis by Judge Weisberg). The fact that the D.C. Council, in year 2000 amendments to the CPPA, "intended to permit representative claims for money damages" did not, in Judge Weisberg's view,

> answer the question of whether the Council intended to exempt such claims from the requirements of Rule 23. The legislative history is silent on the point, but the Council is presumed to legislate with knowledge of the applicable Civil Rules, and there is no reason to assume the Council did not expect and intend the Rule 23 procedural requirements to apply to a CPPA claim for money damages brought by an individual on his own behalf and on behalf of similarly situated members of the general public, particularly where those requirements are

rooted in due process considerations.

Rotunda now challenges the dismissal, which presents an issue of law that we decide *de novo*.[2]

## II.      Jurisdiction

We consider first whether Rotunda has standing to bring this appeal, an issue that arises because, after Judge Weisberg dismissed his representative claim, Rotunda settled his individual claim with Marriott.  The settlement, approved by the trial court in a Consent Order and Final Judgment, was expressly conditioned on Rotunda's ability to appeal the dismissal of the representative claim, but at oral argument this court posed the question — not raised by Marriott — of whether, by settling, Rotunda had forfeited the standing required by our decisions.  *See Grayson v. AT&T Corp.*, 15 A.3d 219 (D.C. 2011) (en banc).  Specifically, we asked whether Rotunda was like the plaintiff/appellant Breakman in *Grayson*, who "rest[ed] his claim entirely 'on the legal rights or interests of third parties,'" and so

---

[2]  The trial judge decided additional issues of statutory interpretation under the CPPA that we have no occasion to consider here.

could not "demonstrate the requisite [personal] injury-in-fact for standing in our courts." *Id.* at 246-47 (citation omitted). We directed supplemental briefing on the issue.

The parties agree that the question here is not strictly one of standing but of mootness,[3] since, unlike Breakman, Rotunda concededly alleged concrete injury to himself in the complaint and up to the dismissal and settlement. *See*, by contrast, *Grayson*, 15 A.3d at 247 ("Because [Breakman] failed to allege the requisite injury-in-fact, . . . the trial court properly dismissed [his] claim for want of subject matter jurisdiction.").

Standing and mootness are, of course, related concepts. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (citation omitted) ("[M]ootness [is] the doctrine of standing set in a time frame: The requisite

---

[3] See Supplemental Brief for Rotunda at 7 ("the issue is whether the [settlement order] relating to Rotunda's individual claim *mooted* his representative claim"); Supplemental Brief for Marriott at 9 (Rotunda's "settlement of his individual claim . . . deprives him of standing . . . by mooting the necessary condition upon which his representative claim depends. . . . '[A] case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome'" (internal quotation marks and citations omitted)).

personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).").  This court nevertheless, though in general adhering closely to Article III's constitutional requirement of standing, *see* discussion at pages [16-17], *infra*, has "not followed strictly federal justiciability requirements" in regard to "the doctrine of mootness."  *Grayson*, 15 A.3d at 235 n.38.  *See Atchison v. District of Columbia*, 585 A.2d 150, 153 (D.C. 1991) ("this court . . . enjoys flexibility in regard to mootness not possessed by the federal courts").  Illustrating that flexibility, in *Atchison* the emergency legislation under review had since expired, yet the court chose to entertain the appeal because the significance of the issue presented "'extends well beyond the rights of the specific parties.'"  *Id.* at 154 (quoting *Pendleton v. District of Columbia Bd. of Elections & Ethics*, 449 A.2d 301, 303 n.1 (D.C. 1982)); *see also Hessey v. Borden*, 615 A.2d 562, 572 n.17 (D.C. 1992) (exercising similar "discretion" not to dismiss because of the reach of the issue beyond the parties).  Even construing Article III constitutional law, we have observed that, while "[l]ack of standing always deprives a court of the power to adjudicate a claim, . . . the doctrine of mootness is subject to recognized exceptions that allow a court to proceed to judgment."  *Mallof v. District of Columbia Bd. of Elections & Ethics*, 1 A.3d 383, 395 n.54 (D.C. 2010).

We choose likewise to reach the merits of this appeal despite Rotunda's settlement of his individual claim. The question of whether the D.C. Council in the 2000 amendments meant to abrogate the procedures of Rule 23 as applied to CPPA representative claims clearly extends in significance beyond the rights and obligations of the instant parties, including the sub-set of the general public that Rotunda purports to represent. And, despite the settlement of his own claim, the case exhibits "sharply presented issues in a concrete factual setting and self-interested parties [who have] vigorously advocate[ed] opposing positions," thus satisfying the "imperatives of a dispute capable of judicial resolution." *Geraghty*, 445 U.S. at 403; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191-92 (2000) ("[B]y the time mootness is an issue, the case has been brought and litigated, often . . . for years. To abandon the case at an advanced stage may prove more wasteful than frugal."). Finally, it is not even certain that dismissal of the appeal would end the dispute in this case. Rotunda makes a serious argument that if the settlement mooted the necessary basis for his representative claim, then the trial court order embodying the settlement rested on a mutual mistake of law — failure of the parties (and the trial court) to recognize the obstacle the settlement imposed to this court's jurisdiction — and would be

voidable on remand on Rotunda's motion.[4] The issues presented would then return to us inevitably, Rotunda asserts, as questions certified by the trial court under Super. Ct. Civ. R. 54 (b).[5] We need not decide whether Rotunda is correct in this reasoning, but the obvious complexity of a situation in which a settlement expressly meant to preserve a right of appeal is now argued to have mooted that right confirms the advisability of entertaining the appeal.

### III.   The Merits

As in *Grayson*, *supra*, the issue we decide here arises under amendments made in the year 2000 to the CPPA. Among other changes, whereas formerly D.C. Code § 28-3905 (k)(1) allowed a consumer to bring suit under the statute if he or

---

[4] "Settlement agreements are construed under general principles of contract law." *Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009) (internal quotation marks and citations omitted). Rotunda cites principles approved and applied by this court, including in the RESTATEMENT (SECOND) OF CONTRACTS §§ 152, 153 (1981), to support the argument that a mistaken belief by both parties that they could settle Rotunda's individual claim while preserving the representative action would require rescission, because the mistake goes to a basic assumption in the settlement.

[5] Judge Weisberg recognized the likely availability of certification of the issues resolved by his dismissal, but agreed with the parties that a settlement and final judgment contingent on appeal as to those issues is "probably a better route because there are standards for what can be certified."

she had been "victimized by [an] unlawful trade practice[]," *District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 717 (D.C. 2003), the statute as amended "expand[ed] the potential plaintiff class so as to permit representative actions on behalf of consumers," broadly defined as "the general public." *Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 n.8 (D.C. 2006) (citation omitted).[6] The amended statute also expanded the remedies available to redress unlawful trade practices to include injunctive relief and, "in representative actions, additional relief as may be necessary to restore to the consumer" gains from an unlawful trade practice. D.C. Code § 28-3905 (k)(1)(E).

However, despite now including "the general public" as a potential plaintiff in representative actions, the 2000 amendments were virtually silent on how broadly-contoured actions for damages are to be regulated or managed. For one thing, the statute says nothing on the critical issue of how absent members of the represented class are to be given notice so as to make their own decisions whether

---

[6] Specifically, the amendments allowed "[a] person, whether acting for the interests of itself, its members, or the general public, . . . [to] bring an action under this chapter . . . seeking relief from the use by any person of a trade practice in violation of the law of the District of Columbia. . . ." D.C. Code § 28-3905 (k)(1)(B). At the same time, the definition of "person" was enlarged to mean "an individual . . . or any . . . organization, legal entity, or group of individuals however organized." *Id*. § 28-3901 (a)(1).

to be bound by the suit.  In that regard it differs, for instance, from a law enacted years earlier authorizing the District government to "bring a civil action . . . as *parens patriae* on behalf of any" resident injured by an anti-trust violation, but under which the District must, "at such times, in such manner, and with such content as the court may direct, cause notice to be given by publication" and any "further notice" the court deems necessary to protect the "due process" rights of any affected "person or persons."  D.C. Code § 28-4507 (b), (c)(1).  This notice is meant, among other things, to enable a "person on whose behalf" an action has been brought to "elect to exclude from adjudication the portion of the District of Columbia claim for monetary relief attributable to that person by filing notice of such election with the court . . . ."  *Id*. § 28-4507 (c)(2).

The parties recognize, of course, that Superior Court Civil Rule 23 deals expressly with the issue of notice in suits for damages brought by "[o]ne or more members of a class . . . as representative parties."  Rule 23 (a).  Like the anti-trust statute cited above, the rule makes "the best notice practicable under [the] circumstances" a condition of later binding absent members to a judgment unless they "request exclusion" or enter their own appearance in the action.  Rule 23

(c)(2).[7] Rotunda, however, argues that the silence of the CPPA on the notice issue and, indeed, on any other procedural matter affecting due process is unremarkable and affords no reason to believe the D.C. Council meant to subject CPPA actions to Rule 23's requirements. That is so, he says, because trial judges in such actions have "equitable discretion" or inherent authority "to craft appropriate practical solutions" and "to manage the cases before them" fully in keeping with due process. Brief for Rotunda at 28, 30. But this argument that outside the framework of Rule 23 judges can improvise procedures regulating representative suits encounters significant problems. On the key issue of notice, for example, Rotunda is at odds with the District of Columbia as *amicus curiae*, which otherwise supports him on the relation of Rule 23 to suits for damages under the CPPA. Rotunda contends that "[n]othing in the [CPPA] prevents members of the general public who decline statutory damages[8] from bringing an independent

---

[7] The notice provision of Rule 23 is limited to those class actions "maintained under subsection (b)(3)" of the rule. As we recognized in *Ford*, *supra*, itself a class action brought under the CPPA, "[c]lass actions seeking mainly monetary relief usually fall under Rule 23 (b)(3), which not only implicates class member notification and opt-out rights but also mandates additional findings by the trial court." 908 A.2d at 88.

[8] Available relief under the CPPA includes "treble damages, or $1,500 per violation, whichever is greater, payable to the consumer." D.C. Code § 28-3905 (k)(2)(A).

action to prove a claim and recover whatever damages that person asserts are due." Reply Brief for Rotunda at 3. But that begs the question of whether absent members of the putative class can be required to "*decline . . .* damages" (emphasis added) or else be bound by the class-wide judgment. The District is clear on the issue: "[T]he CPPA does not allow trial courts to create an 'opt-out' system in which those who remain silent [*i.e.,* do not "decline" participation] would be bound by any judgment." Brief for the District of Columbia at 18. This is in evident recognition that, outside of detailed structures regulating class actions like those in Rule 23, a procedure binding absent class members who do not affirmatively distance themselves from the suit would present grave due process concerns.

At the same time, the District's suggested procedure for alleviating these concerns — lukewarmly endorsed by Rotunda at oral argument — highlights the difficulty in assuming that the Council intended a divorce between the CPPA and Rule 23's procedures. Non-applicability of Rule 23 would not preclude a court, the District says, from adopting an "opt-in" procedure requiring that "absent 'class' members affirmatively opt in to the action in order to be bound." Brief for the District of Columbia at 17. This improvisation might indeed allay due process concerns, but by effectively turning the CPPA action for damages into what it is

not, namely a "collective action," *id.*, maintained by multiple *named* plaintiffs rather than the representative suit the CPPA envisions. For this model the District and Rotunda point to suits brought under 29 U.S.C. § 216 (b) (2012), part of the federal Fair Labor Standards Act. But that statute, as courts have recognized, by its terms confers no right on a plaintiff to recover representatively on behalf of non-present claimants. Section 216 (b) extends to absent third-parties the right to join an existing law suit, meaning that "a named plaintiff . . . d[oes] not represent the interests of similarly-situated [plaintiff-]employees who [have] not yet opted in." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 917 (5th Cir. 2008). Nothing in the CPPA amendments suggests that in place of Rule 23's notice and opt-out procedures the Council envisioned a process such as this that effectively eliminates the representative character of a suit for damages.

Yet another deep uncertainty, in our view, would beset the effort to regulate CPPA actions on behalf of "the general public" outside Rule 23's framework. On a par with the rule's notice requirements meant to secure "the interest of members of the class in individually controlling the prosecution or defense of separate actions," Rule 23 (b)(3)(A), is its concern with the manageability of suits brought

on behalf of a potentially vast number of plaintiffs.[9]  *See*, *e.g.*, Rule 23 (b)(3)(D) (court must consider "the difficulties likely to be encountered in the management of a class action" before determining that a representative suit is superior to other modes of adjudication).  Rule 23 enables the trial court to determine "whether under the particular circumstances maintenance of a class action [will be] economical," *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982), and thus to refuse to certify the action, or to order redefinition of the alleged class, if the evidence proffered threatens a proliferation of individual issues — and attendant sub-trials — incompatible with "[t]he core concept underlying the class action device . . . that there be questions of law or fact common to the class." *Ford*, 908 A.2d at 85.

The danger of such proliferation of issues not amenable to trial in one action, even with "divi[sion] into subclasses," Rule 23 (c)(4)(B), is most acute as to allegations of fraud or misrepresentation, particularly when oral representations may be involved.  *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1781.1 at 262-64 (3d ed. 2005) (discussing securities-fraud actions

---

[9]  Rotunda, for example, brought this suit on behalf of the "general public" defined as all guests of the Marriott Russian hotels who reside anywhere in the world and are "consumers" under the CPPA.

and pointing out that, notwithstanding class-wide fraud allegations, "[i]f it later is determined that the issues pertaining to each class member are so varied that it would be impractical to continue the entire action under Rule 23, the reference to a class action can be eliminated under [Rule 23] (d)(4) and the action allowed to proceed [only] on an individual basis"); *see also id*. § 1781.1, at 279-80 ("if the court finds that there are any material variations in the content of the misrepresentations or if oral representations are involved, a class action may be inappropriate").

Not only does Rotunda's complaint rest on allegations of misrepresentation, but the CPPA itself makes actionable a wide array of false or misleading representations and omissions of material fact. *See*, *e.g.*, § 28-3904 (a)-(f), (j), (k), (*1*). Yet it is wholly unclear from Rotunda's brief or oral argument — or from the District's position as *amicus* — whether they would recognize inherent authority of the court to eliminate from a CPPA complaint "allegations as to representation of absent persons," Rule 23 (d)(4), if the court concludes that individual issues of fact or law (say, as to liability) will predominate over common ones and threaten a succession of mini-adjudications in the guise of a representative action. If indeed the trial court has the "equitable discretion" (Br. for Rotunda at 30) to declare the

representative action unmanageable, then it is not evident why Rotunda resists application of Rule 23's procedures to a CPPA action, when the alternative — as Marriott's counsel aptly styled it at oral argument — is an array of makeshift "Rule 23-Lite" controls available to the court in exercising its inherent authority. But if, on the other hand, Rotunda maintains and is correct that the representative plaintiff has exclusive control under the CPPA of whether the action may suitably proceed as a class-wide one despite insuperable "difficulties likely to be encountered in [its] management," Rule 23 (b)(3)(D), then the legislature will have tied the hands of trial judges for a potentially large array of representative actions, without having stated its clear intent to do so.

In these circumstances, we conclude that decision here should be guided by the approach the court followed in its en banc decision in *Grayson*, *supra*. In *Grayson*, the primary issue was whether the same 2000 amendment to the CPPA allowing one "acting for the interests of . . . the general public" to bring suit evinced an intent of the Council "to override or disturb [this court's] constitutional . . . requirement" that a plaintiff show injury-in-fact. *Grayson*, 15 A.3d at 245. We recognized, of course, that the requirement of standing — proof of "some threatened or actual injury resulting from . . . putatively illegal action," *id*. at 224

(citation omitted) — does not bind this court constitutionally, since "we are an Article I Court." *Id*. at 233. But as a general rule, "[t]hrough the years our cases consistently have followed the constitutional minimum of standing," *id*. at 235, chiefly in recognition "that an adversary system can best adjudicate real, not abstract, conflicts." *Id*. at 233 (quoting *District of Columbia v. Walters*, 319 A.2d 332, 337 n.13 (D.C. 1974)); *see also Fraternal Order of Police v. District of Columbia*, 113 A.3d 195, 199 (D.C. 2015) ("we typically 'follow[] the principles of standing, justiciability, and mootness' for prudential reasons" (quoting *Atchison*)).

The court therefore inquired in *Grayson* whether "the words of the 2000 amendments, viewed in the context of the legislative and drafting history," reveal "an explicit intent" to erase the standing requirement to which this court has adhered. 15 A.3d at 224 (footnote omitted). It found no such declared intention. The words of § 28-3905 (k)(1), we acknowledged, "at first blush may appear to be crystal clear" in dispensing with a standing requirement, *id*. at 243, but the larger statutory context and the changes the Council otherwise "expressly" intended to

make by the 2000 amendments[10] left us unconvinced that subsection 3905 (k)(1) was a "clear expression" of an intent "so unusual" as to dispense with our longstanding injury-in-fact requirement. *Id*. at 243-44.

Like this court's standing requirement, Rule 23 has been a mainstay of Superior Court civil practice for decades,[11] the time-tested framework within which suits for damages by class-members "as representative parties," Rule 23 (a), have been maintained. The detailed procedures it contains and the authority it invests in the court to administer them address the concerns of constitutional fairness and case management that arise in suits brought on behalf of potentially large numbers of absent class-members. As in *Grayson*, we believe that before the Council is understood to have abrogated or repealed the rule's application to representative suits under the CPPA, it must be seen to have done so unambiguously — "clear[ly] or explicit[ly]." *Grayson*, 15 A.3d at 242. Especially

---

[10] "[O]ur reading of the legislative and drafting history," we said, "indicates that the Council expressly sought to augment the remedies available to enforce the CPPA under a revised § 28-3905 (k)(1) by providing for injunctive relief and merchant disgorgement of ill-gotten gains . . . and by expanding [the District Attorney General's] authority" in enforcing consumer protection. *Grayson*, 15 A.3d at 245.

[11] This court's decisions citing the rule go back at least to *Smith v. Murphy*, 294 A.2d 357, 360 (D.C. 1972), shortly after the Superior Court was established.

when the alternative, as Judge Bartnoff stated in the *Margolis* opinion cited at the outset, is to force trial judges to "make up new rules [on an ad hoc basis] in CPPA representative actions for damages," *Margolis*, 2009 D.C. Super. LEXIS 8, at *14, we choose instead to require explicit proof of the Council's intent for this *pro tanto* repeal of procedures that arguably are as important to the Superior Court's "judicial self-governance," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), as the injury-in-fact requirement we have imposed on ourselves.

Rotunda has furnished us with no unambiguous evidence, in the 2000 amendments or the supporting legislative history, that the Council meant to displace the Rule 23 framework in favor of improvised due process and management devices for a whole sub-set of representative actions. Nor do we agree with the District's suggestion that "[i]f the Council intended representative actions for damages on behalf of the general public to be treated like class actions," the CPPA's language recognizing such suits "was completely unnecessary" and "superfluous." Brief for the District of Columbia at 8.[12] Beyond the fact that "the canon against surplusage is not an absolute rule," *Marx v. General Revenue Corp.*,

---

[12] This is so, it says, because "aggrieved persons have always been able to bring a class action for violations of the CPPA." *Id*. at 7-8, citing *e.g.*, *Ford*, *supra*.

133 S. Ct. 1166, 1177 (2013), the Council's affirmation of the right to bring representative suits *within* the framework of Rule 23 would be wholly consistent with what it otherwise did in the 2000 amendments by, among other things, expanding the remedies for proven CPPA violations, particularly in representative suits, § 28-3905 (k)(2)(E), and enlarging the definition of who may sue — *i.e.*, of "person" — to include any "group of individuals however organized." *Id*. § 28-3901 (a)(1). Further, a court administering Rule 23 in a CPPA action would have to be mindful of another "key . . . amendment" in 2002 which requires the CPPA to "be construed and applied liberally to promote its purpose." *Grayson*, 15 A.3d at 242 (quoting D.C. Code § 28-3901 (c)). The example for such sensitivity to the statute's purpose was set in *Ford v. ChartOne*, *supra*, where our analysis made clear that before denying class-certification in a CPPA action, the trial court must scrutinize a claim, for example, that individual issues of liability will predominate over common issues so as to make the representative action unmanageable. *See* 908 A.2d at 89-93. Altogether, the 2000 amendments give full meaning to the Council's recognition of a representative suit for damages under the CPPA even if the necessary vehicle for suits seeking class-wide damages remains Rule 23.

In sum, the unique challenges to procedural fairness and administration posed by a representative suit for damages require certainty, in our view, that the legislature has taken them into account before displacing the framework that has governed such suits for decades in the Superior Court.[13] Only a clear statement of intention to do so by Council, which the 2000 amendments do not evince, can provide that assurance.

For these reasons, the judgment of the Superior Court is

*Affirmed*.

---

[13] The parties do not contend, nor is it the case, that further amendments to the CPPA in 2012 make clear — retroactively — the Council's intent in 2000 to supplant the applicability of Rule 23 to representative suits under the statute. "[S]uch postenactment views," in any event, "'form a hazardous basis for inferring the intent' behind a statute." *United States v. Monsanto*, 491 U.S. 600, 610 (1989).