*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 22-CV-0567

CLAUDIA ALLEN, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2020-CA-3374-B)

(Hon. Shana Frost Matini, Trial Judge)

(Argued October 3, 2023                    Decided March 28, 2024)

*Matthew E. Stubbs*, with whom *Christopher T. Nace* was on the brief, for appellant.

*Jeremy R. Girton*, Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellee.

Before BECKWITH, MCLEESE, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Claudia Allen sued the District of Columbia[1] in relation to a late payment penalty that was levied against her when she failed to timely pay a traffic ticket. It is undisputed that Allen in fact timely sent her payment in using the pre-addressed envelope provided by the District, but the post office failed to deliver it and it was ultimately returned to Allen as undeliverable mail. That failed delivery, Allen asserts, was a result of the District's use of red (rather than black) ink on pre-addressed payment return envelopes, which in her telling is hard for the United States Postal Service's machines to read and thereby increases failed delivery rates.

Allen sued the District for negligence on her own behalf and also sought to certify a class of similarly situated people who were assessed late payment penalties during the period when the District used red ink on its payment return envelopes. The trial court granted summary judgment for the District on Allen's individual negligence claim, concluding that the evidence would not permit a reasonable jury to conclude that the use of red ink is what caused her payment to go undelivered.

---

[1] Allen has at times styled her suit as against the District's Department of Motor Vehicles, but both her operative complaint and her notice of appeal name the District of Columbia as her opposing party. The District has asked that we caption this case to reflect that, Allen has not raised any objection, and so the caption now reflects that the District of Columbia is the opposing party in this case.

The court also rejected her request for class certification on the basis that she did not satisfy the Rule 23 requirements for certifying a class action.

Allen now appeals. We agree with the trial court that Allen adduced no evidence from which a reasonable jury could conclude that the use of red ink caused her payment to go undelivered, so we affirm the grant of summary judgment. And because Allen has no viable claim of her own, she cannot represent any class of claimants, so we likewise affirm the denial of her motion to certify a class.

## I. Factual Background

*The Traffic Ticket, the Failed Payment, and the Penalty*

Allen received a Notice of Infraction, mailed September 6, 2018, stating that a vehicle registered to her was photographed exceeding the posted speed limit of thirty-five miles per hour in Northeast D.C. The notice stated that Allen was being assessed a $100 fine that would be doubled if she did not pay or contest the ticket within thirty days. Allen attempted to pay the fine by mailing a $100 check using the return envelope included with the notice. That return envelope bore the address of the DMV's adjudication services division and a pre-applied Intelligent Mail Barcode ("IMB code"), used to assist in automatically sorting mail. Both the address and the IMB code were printed in red ink.

The next month, Allen received a notice stating that she had failed to pay or contest her ticket within thirty days, resulting in the additional $100 penalty. Allen called the DMV and told a representative that she had timely mailed a check in response to the citation in order to pay it. The representative responded that the DMV had not received Allen's payment and had therefore levied the additional $100 penalty. Allen then paid both the initial fine and penalty, totaling $200, over the phone via credit card.

Later that month, Allen's mailed payment envelope was returned to her adorned with a yellow sticker, which read: "Return to Sender," "Unclaimed," "Unable to Forward." The postmark on the envelope indicated that it had been processed by USPS on September 22, 2018, well within Allen's thirty-day initial window for timely payment. Allen called the DMV and explained that she had proof of timely mailing her payment, but was informed that she could not obtain a refund of the $100 late penalty because it was properly assessed by virtue of the fact that the District did not receive her payment on time.

Allen retained counsel, who in March 2019 notified the District that she intended to sue on the basis that it was the District's own use of red ink on its return envelopes that caused Allen's payment to go undelivered. Shortly thereafter, the District instructed its subcontractor tasked with printing the pre-addressed return

envelopes to stop using red ink and to instead use black ink. Within months, the DMV had moved to printing all of its pre-addressed return envelopes in black ink.

*The Litigation*

Allen sued the District asserting an individual claim for negligence and also seeking to certify a class of similarly situated claimants. Allen sought $100 in damages for her individual claim and $10 million in damages on behalf of a class of individuals who were assessed late payment penalties during the period when the District printed its return envelopes using red ink. She further sought injunctive relief prohibiting the DMV from using red ink on its pre-addressed return envelopes. Allen introduced an expert report from Peter Wade, a longtime USPS employee, while the District submitted its own expert report from John Mashia, an executive at a mass mailing operation.

*The Expert Reports and Depositions*

Wade, Allen's expert, opined that the DMV's pre-printed envelope that Allen had used to pay her ticket "[did] not meet the basic USPS requirements for such mail as the return address is printed in red ink." He cited to various USPS guidelines related to information printed on mail, and they generally recommended using black ink (and in one instance specifically advised against red ink) for various types of

mailings.[2] Wade also noted that the IMB code printed on Allen's returned envelope was "invalid" because it "[did] not match the intended address." Wade concluded that "[t]hese failings made the returned envelope unreadable by the automated mail-processing equipment used by USPS and, ultimately, caused it to be returned to Claudia Allen instead of reaching its intended destination."

Mashia, the District's expert, countered that the IMB code printed on Allen's return envelope was accurate and that the failed delivery could not be traced either to it or to the use of red ink. Instead, Mashia explained that USPS had repeatedly sprayed a different barcode over the accurate, pre-applied barcode, which prevented USPS processing machines from correctly reading and sorting the envelope and thus prevented the delivery of Allen's envelope. Mashia did not opine on what caused USPS to spray those inaccurate barcodes, but maintained (1) that he had seen the "same error numerous other times," so it was "not uncommon," and (2) that red ink

---

[2] They were: (1) USPS Publication 25, which provides requirements for the minimum print reflectance difference for information printed on letter-size mail, and states that "[b]lack ink on a white background usually satisfies this requirement, and the Postal Service recommends it"; (2) USPS Publication 177, which applies to flat-size mail and recommends the use of "black ink against a light background"; (3) USPS Publication 28, which provides general recommendations for "Postal Addressing Standards" and states that addresses should be printed "in dark ink on a light background"; and (4) Section 202 of the USPS Domestic Mail Manual, which specifies that automated mail "[n]ot contain phosphorescent or red fluorescent colorants."

was not the culprit, noting that it "would not cause [the envelope] to be unreadable or returned." Mashia characterized the failed delivery as a "fluke": "[N]ot the result of any systemic inability to read or process the envelope or others like it," but just a USPS slip up that happens from time to time no matter how clearly marked an envelope may be. Mashia also pushed back on the USPS guidelines that Wade relied upon in his initial report, asserting that they "do not apply to letter-size, full-postage, First-Class mailpieces like Ms. Allen's [e]nvelope." They instead applied only to "automated mail and related" discounted mailings.

Wade supplied a supplemental report in response. Wade conceded that the original IMB code printed on Allen's envelope was accurate and that the spraying of additional barcodes caused the delivery error, largely backtracking from his initial report and agreeing with Mashia. But, he asserted, "the simplest explanation for the USPS's spraying of additional barcodes over the preprinted barcode" was the District's use of red ink, which USPS mail sorting machines were unable to recognize and interpret. Wade also asserted that USPS Publication 25, cited in his original report, applied to Allen's envelope because it was "letter-size mail"— regardless of it being first class—and that the remaining guidelines were simply included "to illustrate the USPS' clear and stated preference for printing address information in black ink."

Both experts were deposed. In his deposition, Wade estimated the likelihood of an envelope printed in black ink going undelivered at "less than 2 percent," while he estimated the likelihood of an envelope printed in red ink going undelivered as "very remote." He agreed that it was possible for USPS mail sorting machines to read red ink. Wade also declined to offer a "final definitive opinion" on what caused Allen's envelope to go undelivered. During his deposition, Mashia testified—consistent with his report—that the printing of multiple barcodes over the original accurate IMB code caused Allen's envelope to go undelivered, not the red ink.

Beyond the experts, the District presented two other relevant witnesses to support its position that the red ink on its return envelopes did not cause Allen's mail to go undelivered. The first witness was Gerald Inglesby, an executive at the District's printing subcontractor, who explained that since the District moved to printing its pre-addressed return envelopes in black ink, there was no meaningful difference in the number of late payment notices that were issued. In fact, there had been the slightest uptick in the percentage of late payment notices sent since moving to black ink, suggesting the red ink was not behind any systemic delivery failures.[3]

---

[3] Inglesby calculated the number of Notices of Infraction and the number of follow-up late payment notices sent between August 2017 and March 2020. Between September 2017 and August 2019, when the return envelopes were printed

The second witness was Wanda Butler, who testified that in her seventeen years of running the DMV's adjudication services division, she had no record or memory of any previous instance or complaint of a payment not being delivered because of the red ink on the pre-addressed envelopes.[4]

*The Trial Court's Rulings*

Allen sought to certify a class defined as every individual who failed to answer a speeding ticket within thirty days between August 1, 2017, and September 16, 2019. The Superior Court denied Allen's class certification motion, finding that Allen produced no evidence indicating that any other putative class member had incurred a late penalty due to a return envelope printed in red ink, and thus had failed to establish the commonality, typicality, or adequacy requirements necessary to certify a class under Super. Ct. Civ. R. 23(a). For the same reason, the court

---

in red ink, 37.22% of all Notices of Infraction required a follow-up late payment notice. Between October 2019 and February 2020, when the return envelopes were printed in black ink, that number increased slightly to 37.45% of all Notices of Infraction requiring a follow-up late payment notice. Inglesby excluded September 2019 from his calculation because the transition from red ink to black ink occurred in mid-September. The District stopped sending late payment notices in March 2020 due to the COVID-19 pandemic.

[4] We take that testimony with a grain of salt, because even if a person's payment was returned due to the use of red ink, it seems unlikely that the person would themselves piece that together.

concluded that Allen failed to establish that common questions of law or fact predominated over individual questions, as required under Rule 23(b)(3).

Following the trial court's denial of Allen's class certification motion, both parties cross-moved for summary judgment on Allen's individual negligence claim. The trial court granted the District's motion, concluding that Allen failed to raise a genuine dispute of material fact that the District's use of red ink caused her initial payment to go undelivered. Allen now appeals.

## II. Analysis

Allen first argues that the Superior Court erred in granting the District's motion for summary judgment because, contrary to the trial court's reasoning, the evidence raised a genuine issue of material fact on the question of causation sufficient to reach a jury. In concluding otherwise, her argument goes, the court improperly intruded on the jury's role of weighing conflicting expert evidence. Allen next argues that the Superior Court repeatedly applied the wrong legal standards in its analysis of the Rule 23 class action requirements and therefore abused its discretion in denying her motion for class certification.

Because Allen "must have an individual cause of action of [her] own to assert before [she] may be permitted to maintain a class action," we address the summary judgment ruling first. *Ford v. Chartone, Inc.*, 908 A.2d 72, 80 (D.C. 2006).

## A. Standard of Review

"We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party." *Aziken v. District of Columbia*, 70 A.3d 213, 218 (D.C. 2013) (quoting *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013)). An award of summary judgment is appropriate "only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law." *Bradshaw v. District of Columbia*, 43 A.3d 318, 323 (D.C. 2012) (quoting *Jones v. Thompson*, 953 A.2d 1121, 1124 (D.C. 2008)). "A plaintiff cannot stave off the entry of summary judgment through mere conclusory allegations." *Aziken*, 70 A.3d at 218 (internal quotation marks and brackets omitted) (quoting *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1063 (D.C. 2008)). "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A negligence claim requires a three-part showing: (1) that the defendant owed the plaintiff a duty of care, (2) that the defendant breached that duty, and (3) that the

breach proximately caused damage to the plaintiff. *Freyberg v. DCO 2400 14th St., LLC*, 304 A.3d 971, 976 (D.C. 2023).

### B. The Evidence Did Not Raise a Genuine Question Regarding Causation

The trial court reasoned that Allen raised genuine issues of material fact as to the first two elements of a negligence claim (duty and breach), but did not adduce evidence from which a reasonable jury might conclude that the use of red ink proximately caused her injury. It is that causation prong of the trial court's analysis that Allen now targets and where we now focus our analysis.

To establish proximate causation, the evidence must be sufficient for a reasonable juror to conclude that there was "some direct relation between the injury asserted and the injurious conduct alleged." *Fleming v. United States*, 224 A.3d 213, 224 (D.C. 2020) (en banc) (quoting *Paroline v. United States*, 572 U.S. 434, 444 (2014)); *cf. id.* (noting "[t]he concept of proximate causation is applicable in both criminal and tort law"). There is no dispute here that if the red ink in fact caused Allen's letter to go undelivered, then it likewise proximately caused that result. The District does not argue, for example, that the red ink factored into the causal chain of non-delivery, but in such an attenuated fashion as to amount to a non-proximate cause. *Id.* at 224 (proximate cause requirement "preclude[s] liability in situations where the causal link between conduct and result is so attenuated that the

consequence is more aptly described as mere fortuity"). We therefore focus on causation in general, rather than on proximate causation in particular.

On appeal, Allen argues that the competing explanations of Wade and Mashia regarding whether the District's use of red ink caused her envelope to go undelivered constitutes a "battle of the experts" that should have been resolved by a jury. Allen further asserts that the trial court granted summary judgment only after weighing the conflicting testimony of Wade and Mashia and improperly resolving their conflicting opinions in the District's favor. In her view, Wade's testimony alone was evidence from which a jury could reasonably conclude that the District's use of red ink played a role in the USPS returning her envelope, but the trial court improperly intruded into the jury's role by discrediting Wade's opinion and crediting Mashia's. We disagree.

It would simply not be possible for a jury to conclude, based on Wade's opinions (even when ignoring Mashia's), that Allen's payment went undelivered due to the use of red ink. Most critically, Wade ultimately offered no support for the proposition that an envelope addressed in red ink was less likely to be delivered than one addressed in black ink. He estimated that an envelope printed in black ink would fail to reach its destination "less than 2 percent" of the time, while estimating that the likelihood of an envelope printed in red ink going undelivered was "very

remote." We do not see how a jury could conclude from that testimony that an envelope printed in red ink was *any* more likely to go undelivered—Wade did not suggest that a "very remote" chance was higher than two percent, and we see no basis upon which a reasonable juror could have otherwise reached such a conclusion in this context. And even if the use of red ink made it *slightly* more likely that her envelope would go undelivered (an opinion Wade did not offer), that also would not provide any basis to conclude that red ink was the likely cause of the failed delivery here. Wade would have had to opine that the use of red ink was more likely the cause of the failed delivery than the "less than 2 percent" chance that it was mere human error, unattributable to anything in how the mail was addressed. And unlike Wade, who offered no "final definitive opinion" on what caused the failed delivery here, Mashia did offer an opinion: the likely explanation of the failed delivery here was simple USPS error, unattributable to anything about how the envelope was addressed.

Wade also had to ultimately backtrack from his initial opinion that the pre-addressed envelope came pre-printed with an invalid IMB code. In his supplemental report, he abandoned that view and agreed with Mashia that USPS's spraying of additional barcodes over the original, accurate code is what caused the envelope to go undelivered.

It is true that Wade further asserted in his supplemental report that the use of red ink was "the simplest explanation for USPS's spraying of additional barcodes over the preprinted barcode," but that unadorned statement cannot be squared with the remainder of his testimony as it does not account for the baseline error rates that he attributed to mailings printed in any color. His bare assertion—undermined not only by Mashia's testimony and the District's other witnesses,[5] but by Wade himself—is not sufficient to survive summary judgment, even when offered by a qualified expert. *Varner v. District of Columbia*, 891 A.2d 260, 270 (D.C. 2006) ("conclusory assertion" of expert was "insufficient to establish an objective standard of care" for summary judgment purposes); *Ferguson v. District of Columbia*, 629 A.2d 15, 19-20 (D.C. 1993) ("Theoretical speculations, unsupported assumptions, and conclusory allegations advanced by an expert . . . are not entitled to any weight when raised in opposition to a motion for summary judgment.").[6]

---

[5] As Inglesby's declaration sets out, the District's shift from red ink to black ink resulted in a negligible increase in late payment notices being sent. While far from dispositive, it undermines Allen's claim that the use of red ink in the prepayment envelopes led to failed deliveries in any systemic way.

[6] We offer a word of caution here, because there are certainly times where an expert's opinion might be fairly described as conclusory but would nonetheless be sufficient to raise a question for a jury. Imagine an expert qualified in basketball's shooting mechanics who, without further elucidation, opines simply that they know what good shooting form looks like and that Steph Curry has it. That would seem

While we agree with Allen at a generic level that "battle[s] of the experts" typically present records "in which the factfinder must decide the victor," *Mendes-Silva v. United States*, 980 F.2d 1482, 1487 (D.C. Cir. 1993), this was simply not a battle. It was a one-sided affair where the experts collectively did not support Allen's claim of causation, and Wade himself struck no blows for Allen's cause. Wade's testimony on its own terms could not support a finding that red ink is what caused Allen's payment to go undelivered. That distinguishes this case from the authorities, like *Mendes-Silva*, that Allen relies upon. *Id.* (explaining that expert's opinion raised genuine issue of material fact sufficient to survive summary judgment where it "was based on far more than a leap of faith").

There is nothing else in the record that lends any meaningful support to Allen's claim that the red ink caused the failed delivery either. While Allen stresses

---

to be enough for a jury to credit that opinion—provided of course that the expert was truly well qualified and did not overtly contradict themselves—and that would be true even if the expert offered a less conventional opinion, like that Wilt Chamberlain's underhanded free throws were also an example of good shooting form. The problem for Wade, and ultimately for Allen, is that Wade's own explanations undermined his conclusory assertion that red ink was to blame. When he explained that one would expect mail addressed in black ink to go undelivered through simple human error "less than 2 percent" of the time while the odds of mail addressed in red ink going undelivered were "very remote," his assertion that red ink was the most likely culprit was not only unexplained, but at odds with the remainder of his testimony so that a jury could not reasonably credit it on its own terms.

that the District shifted to using black ink in response to her attorney notifying the District that she intended to sue in relation to its use of red ink, that change in practice does not support an inference that the use of red ink caused Allen's envelope to go undelivered. It is just as readily explained by the District's aversion to potential lawsuits, even if they are ultimately unmeritorious.

We agree that the District was entitled to summary judgment on Allen's individual claim. And because Allen has no viable claim of her own, she likewise cannot bring a claim on behalf of a class, so we need not further consider her challenges to the trial court's denial of class certification. *Ford*, 908 A.2d at 80.

**III.**

For the foregoing reasons, we affirm.

*So ordered.*